IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THE PENN MUTUAL LIFE | : | CIVIL ACTION |
| INSURANCE COMPANY | : | NO. 10-00625 |
| | : | |
| v. | : | |
| | : | |
| BNC NATIONAL BANK, et al. | : | |

O'NEILL, J. SEPTEMBER 2, 2010

MEMORANDUM

In this lawsuit, plaintiff Penn Mutual Life Insurance Company seeks: (1) declaratory judgment that the life insurance policy it issued to defendant Gerald Carnago is either void or voidable; and (2) damages for material misrepresentations allegedly made by defendants Carnago, Stephen D. Schutte and BNC National Bank. Defendants move to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Eastern District of Michigan. Presently before me are defendants' motions and plaintiff's response thereto. For the following reasons, I will deny both motions.

BACKGROUND

Plaintiff is a life insurance company incorporated in Pennsylvania. Its principal place of business is Horsham, Pennsylvania. On October 15, 2007, defendant Carnago applied to plaintiff for a five million dollar life insurance policy. His application was handled by defendant Stephan D. Schutte, a licensed life insurance agent. Both Schutte and Carnago were residents of Michigan. Defendants assert that neither Schutte nor Carnago traveled to Pennsylvania "for any purpose related to [the] life insurance policy [in question]." See Def.'s Br. at 1.

On October 24, 2007, plaintiff issued the requested insurance policy in the name of the Carnago Trust, which had been established that day. The trustee of the Carnago Trust was

defendant BNC National Bank, a citizen of the state of Minnesota.

After further investigation, plaintiff concluded that Carnago had purchased the life insurance policy for the sole purpose of selling it on a secondary market "in which speculative investors seek to obtain pecuniary interests in life insurance policies on individuals with whom they have no prior relationship." Compl. ¶ 6. Plaintiff alleges that such an arrangement is unlawful. Plaintiff filed this lawsuit in the Montgomery County Court of Common Pleas seeking a declaration that the insurance policy is void. On February 16, 2010, pursuant to 28 U.S.C. § 1441(a), defendants removed the case to this Court. I have subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Whether I have personal jurisdiction and whether venue is appropriate are the subjects of the present motions.

STANDARD OF REVIEW

I.      Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides a means by which a defendant may move to dismiss a claim for lack of personal jurisdiction. Once the defendant files a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has personal jurisdiction over the defendant. See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Where the District Court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)). The plaintiff is entitled to have its allegations taken as true and all factual disputes resolved in its favor. See id.

II.     Motion to Transfer Venue

28 U.S.C. § 1404(a) authorizes the District Court to transfer an action to "any other district or division where it might have been brought" if such transfer is "[f]or the convenience of parties and witnesses [and] in the interest of justice." Before granting a motion to transfer venue, the Court must undertake a balancing test in deciding whether "the interests of justice would be better served by a transfer to a different forum." See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

DISCUSSION

Defendants argue that this case should be dismissed for lack of personal jurisdiction or, in the alternative, that it should be transferred to the Eastern District of Michigan. Both of their arguments turn on the extent to which the parties and operative facts of the case are connected to this District. I will discuss each argument in turn.

I.  Personal Jurisdiction

Defendants first argue that I do not have personal jurisdiction over them because they have had no contact with the Commonwealth of Pennsylvania. "A District Court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (citing Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)). The Pennsylvania long-arm statute provides that Courts may exercise personal jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b) (cited in D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009)). The Due Process Clause, in turn, requires that a defendant have "certain minimum contacts with [the forum state]

3

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See D'Jamoos, 566 F.3d at 102 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Court of Appeals has held that minimum contacts may be satisfied under either of two tests: (1) the "traditional test" or (2) the "effects test." See Marten v. Godwin, 499 F.3d 290, 296-97 (3d Cir. 2007) (distinguishing between the traditional test and the effects test).

> A. Application of the Traditional Test Reveals that this Court Has Personal Jurisdiction Over Defendants

The traditional test involves a three-step analysis.[1] See D'Jamoos, 566 F.3d at 102. First, I must determine whether defendants have purposefully directed their activities at this forum such that they should reasonably anticipate being haled into Court here. See id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)); North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Next, I must decide whether the litigation arises out of the

---

[1] The D'Jamoos test applies where personal jurisdiction is specific, as opposed to general, in nature. See D'Jamoos, 566 F.3d at 102. "[W]hen a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising 'specific jurisdiction' over the defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). On the other hand, "[w]hen a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state has been said to be exercising 'general jurisdiction' over the defendant." See id. at 415 n.9.

In the present case, defendant's contacts with Pennsylvania are clearly insufficient to allow this Court to exercise general jurisdiction. See id. at 415-16 (requiring "continuous and systematic general business contacts" in order for the Court to exercise general jurisdiction over a defendant); see also In re Chocolate Confectionary Antitrust Litigation, 674 F. Supp. 2d 580, 597 (M.D. Pa. 2009) (requiring that defendant "maintain perpetual, abiding ties with the forum."). My analysis, therefore, will address whether it is appropriate for this Court to exercise specific jurisdiction.

activities purposefully directed by defendants at this forum. See id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)). Finally, "if the first two requirements have been met, [I will] consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." See id. (quoting Burger King, 471 U.S. at 476) (internal quotation marks omitted)).

        1.        Both Defendants Had Contacts with Pennsylvania Sufficient to Justify this Court's Exercise of Personal Jurisdiction Over Them

I turn now to the question of whether defendants' contacts with Pennsylvania are sufficient to justify an exercise of personal jurisdiction over them. Because personal jurisdiction is defendant-specific, see Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 101 (3d Cir. 2004), I must decide whether an exercise of personal jurisdiction is appropriate with respect to each defendant individually.[2]

        a.        Stephen D. Schutte

Schutte, the soliciting agent responsible for submitting the application for life insurance on behalf of Carnago, argues that this Court lacks personal jurisdiction over him because he is a Michigan resident who did not travel to Pennsylvania for any purpose related to this life insurance policy. See Def.'s Br. at 1. In other words, he argues that he did not purposely direct his activities at Pennsylvania such that he would reasonably anticipate being haled into Court there. See D'Jamoos, 566 F.3d at 102. I disagree.

---

[2] I note that defendant BNC National Bank has not disputed the personal jurisdiction of this Court. Although Shutte and Carnago discuss BNC's connections to Pennsylvania in their brief, the present Rule 12(b)(2) motion was filed only on behalf of Carnago and Shutte. My review of the docket reveals that counsel for BNC has not entered an appearance in this case.

5

At the outset, I note that the fact that Schutte never physically entered Pennsylvania is not dispositive of this question. See North Penn Gas, 897 F.2d at 691 (citing Burger King, 471 U.S. at 476). Instead, the Court of Appeals has instructed District Courts to take "a highly realistic approach [which accounts for] prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1224 (3d Cir. 1992) (quoting Burger King, 471 U.S. at 479) (internal quotation marks omitted). Indeed, the Supreme Court has held that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." See Burger King, 471 U.S. at 476 n.18 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Schutte's contacts with Pennsylvania are not the "random," "fortuitous" or "attenuated" contacts that implicate the Due Process Clause. See Burger King, 471 U.S. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Nor are they the result of "the unilateral activity of another party or a third person[.]" See id. (citing Helicopteros, 466 U.S. at 417). Schutte chose, from the multitude of insurance companies located in each of the fifty states (including his home state of Michigan), a Pennsylvania insurance company with which to conduct business. Indeed, he did more than conduct business with plaintiff–he became its agent. See Best Aff. at ¶ 6 (noting that Schutte entered into the "Independent Agent's Contract" on June 22, 2007). That agency contract was governed by Pennsylvania law and clearly identified plaintiff as a Pennsylvania corporation. See id. at ¶¶ 7-8. The Burger King Court noted that although a choice of law provision is insufficient by itself to confer jurisdiction, such a provision "may reinforce a party's 'deliberate affiliation with the forum state and the reasonable

foreseeability of possible litigation there.'" See Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008) (quoting Burger King, 471 U.S. at 482). Furthermore, Shutte was partially responsible for sending Carnago's life insurance application to plaintiff's Philadelphia office. See Best Aff. at ¶¶ 3-5. Finally, Schutte accepted $54,326.25 in compensation from plaintiff for his role in procuring the Carnago policy and that payment was drawn from plaintiff's bank account in Philadelphia. See id. at ¶ 11. I find that Schutte had sufficient contacts with the Commonwealth of Pennsylvania to allow this Court to exercise personal jurisdiction over him.

        b.        Gerald A. Carnago

Carnago advances an argument similar to that of Schutte: because he is a Michigan resident who never traveled to Pennsylvania for any purpose related to the life insurance policy at issue in this lawsuit, this Court cannot exercise personal jurisdiction over him. See Def.'s Br. at 7-8. Because plaintiff's complaint alleges that Carnago transmitted a life insurance application containing fraudulent misrepresentations to plaintiff's Pennsylvania headquarters and subsequently made monthly premium payments to plaintiff's Pennsylvania bank, I find that Carnago had sufficient contacts with the Commonwealth of Pennsylvania to allow this Court to exercise personal jurisdiction over him.

The facts of Marlin Leasing Corp. v. Biomerieux, Inc., No. 06-5609, 2007 WL 1468840 (E.D. Pa. May 16, 2007), are analogous. There, the plaintiff leased various North Carolina properties to the defendants. See Marlin Leasing, 2007 WL 1468840, at *1. The plaintiff alleged that in the course of the lease negotiations the defendants fraudulently altered a number of the lease agreements and sent them to the plaintiff in Pennsylvania where the plaintiff executed them. See id. at *2. The defendants then made payments to the plaintiff in Pennsylvania. See

id. The Court held that as a result of these contacts with Pennsylvania the defendants "should have reasonably anticipated being haled into court [t]here" and thus it could exercise personal jurisdiction over them. See id.

In this case, like in Marlin Leasing, Carnago transmitted allegedly fraudulent documents to plaintiff in Pennsylvania. See Compl. ¶¶ 42-46. A contract between Carnago and plaintiff was formed in Pennsylvania where plaintiff accepted Carnago's application for insurance.[3] See Altimari v. John Hancock Variable Life Ins. Co., 247 F. Supp. 2d 637, 644 (E.D. Pa. 2003) ("[T]he Pennsylvania Supreme Court found that the insurance company's acceptance of the application and first premium payment 'created a temporary insurance contract that provided insurance coverage for the period of time extending from acceptance of the premium deposit until [the insurance company] either rejected the application because of the applicant's uninsurability or accepted the application and issued the policy applied for.'" (quoting Collister v. Nationwide Life Ins. Co., 388 A.2d 1346, 1348 (Pa. 1978))). Then, like in Marlin Leasing, Carnago made multiple payments to plaintiff's Pennsylvania bank.

Although the Marlin Leasing Court found the facts discussed above to be sufficient to justify personal jurisdiction, this case presents an even more persuasive factual scenario because Carnago initiated the contractual relationship with plaintiff. This Court has held that "[i]n cases where a[n] out-of-state resident contracts with a forum resident, whether the out-of-state resident initiated the relationship is crucial." Shanks v. Wexner, No. 02-7671, 2003 WL 1343018, at *3

---

[3] Defendants argue that because plaintiff accepted in Pennsylvania an application from Michigan, plaintiff did business in Michigan. See Def.'s Br. at 8. I need not decide this question because even if defendants' contention is correct the remainder of defendants' contacts with Pennsylvania are sufficient to support an exercise of personal jurisdiction by this Court.

8

(E.D. Pa. Mar. 18, 2003) (citing Vetrotex Certainteed Corp. v. Consol. Fiber, 75 F.3d 147 (3d Cir. 1996)); see also Pennsylvania Machine Works, Inc. v. North Coast Remanufacturing Corp., No. 04-1731, 2004 WL 2600117, at *4 (E.D. Pa. Nov. 16, 2004) ("Courts applying Burger King often conclude that out-of-state defendants have sufficient contacts when they initiate a business relationship with an in-state party or negotiate a contract in the forum state.") (citing Mellon Bank, 960 F.2d at 1223-26; Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 994 (11th Cir. 1986) ("A direct solicitation by a foreign defendant of the business of a forum resident has been held to be purposeful availment in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated." (internal quotations omitted)). Where a defendant reaches out across state lines to enter into a continuing contractual relationship with the resident of another forum that defendant should reasonably anticipate being haled into Court there. See, e.g., Sea Lift, Inc., 792 F.2d at 994. Therefore, I find Carnago had minimum contacts with Pennsylvania sufficient to justify personal jurisdiction by this Court.

        2.      The Litigation Arises out of the Activities Purposefully Directed by Defendants at the Forum

Having determined that both defendants had sufficient contacts with Pennsylvania to justify personal jurisdiction here, I must next decide whether this case arises out of those contacts. See D'Jamoos, 566 F.3d at 102. Because all three counts of plaintiff's complaint arise out of the alleged fraudulent misrepresentations that defendants transmitted to plaintiff in Pennsylvania, I conclude that plaintiff has satisfied this prong of the test.

        3.      This Court's Exercise of Personal Jurisdiction over Defendants Comports with Traditional Notions of Fair Play and Substantial Justice

Finally, I must determine whether "traditional notions of fair play and substantial justice" prevent this Court from exercising personal jurisdiction. There is a "strong presumption of reasonableness if purposeful availment exists." See Budget Blinds, 536 F.3d at 265 (citing Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1117 (9th Cir. 2002)). Indeed, in order to defeat this Court's jurisdiction at this stage, defendants must "make a 'compelling case' that litigation in Pennsylvania would be unreasonable and unfair." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 325 (3d Cir. 2007) (citing Burger King, 471 U.S at 477). The Supreme Court has enumerated several factors District Courts should consider in deciding whether an exercise of personal jurisdiction is reasonable: "[a]mong them are 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies[.]'" See id. at 324 (quoting Burger King, 471 U.S. at 477) (internal citations omitted).

Defendants rely primarily on the first consideration–the burden on the defendant–in arguing that this Court's exercise of personal jurisdiction would be unreasonable.[4] See Def.'s Br. at 8 ("The relative balancing of inconveniences favors the Defendants."). Specifically, they identify three ways in which defendants would be burdened by defending this lawsuit in this District. First, they argue that most, if not all, of the potential defense evidence and witnesses are located in Michigan. See id. at 8-9. Although this is a legitimate concern, it is insufficient to

---

[4] To be precise, defendants raise this argument in support of their alternative motion to transfer venue. Nevertheless, because the burden on the defendant is a "primary concern" in analyzing the reasonableness of personal jurisdiction in a forum, see O'Connor, 496 F.3d at 324, I will consider the argument here.

meet defendants' heavy burden of showing that jurisdiction in this District would be unreasonable. The Court of Appeals has upheld jurisdiction in the face of far more substantial burdens. See O'Connor, 496 F.3d at 324-25 (upholding personal jurisdiction where defendants would be required to travel 2,000 miles from Barbados to Pennsylvania and familiarize themselves with a foreign legal system). Second, they argue that Carnago's age, 79 years old, and physical condition render personal jurisdiction in this District unreasonable. I disagree. Carnago's age is not such that travel to Pennsylvania would be presumptively unreasonable and defendants have presented no evidence that he suffers from some physical condition that would prevent him from traveling from Michigan to Pennsylvania. Finally, plaintiff argues that "while not pleading poverty, the financial condition[s] of the individual [d]efendants are far poorer than that of [plaintiff]." See Def.'s Br. at 9. Although defendants' assertion may be true, they have presented no evidence to establish that defending the suit in Pennsylvania would have a financial impact upon them profound enough to render an exercise of personal jurisdiction unreasonable. Additionally, the Supreme Court has acknowledged that technological advancements have made defending a lawsuit in a foreign forum less burdensome on defendants. See Burger King, 471 U.S. at 474 (citing McGee, 355 U.S. at 223) ("modern transportation and communications have made it less burdensome for a party sued to defend himself in a State where he engages in economic activity."). Accordingly, I find that the burden on the defendants of defending this lawsuit in Pennsylvania is not substantial enough to render unfair an exercise of personal jurisdiction by this Court.

Defendants present no argument with respect to the remaining Burger King considerations. Nevertheless, I find that Pennsylvania has an interest in protecting the rights of

11

its citizens from fraudulent misrepresentations by out-of-state actors and that plaintiff has an interest in the expedient resolution of its claims. Additionally, I find that the interstate judicial system's interest in obtaining the most efficient resolution of controversies is vindicated by allowing the case to continue in this Court, which is familiar with the factual allegations and legal arguments underlying the complaint. In sum, I find that traditional notions of fair play and substantial justice are no obstacle to this Court's exercise of personal jurisdiction over defendants.

> B. Under the Effects Test Both Schutte and Carnago Had Sufficient Contacts with Pennsylvania to Justify this Court's Exercise of Jurisdiction

The effects test, adopted by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), allows a District Court "[to] exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998). In order to avail itself of the effects test, a plaintiff must allege that:

> (1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66.

Application of the effects test also leads me to conclude that this Court has personal jurisdiction over both defendants.[5] The effects test operates to lower the minimum contacts

---

[5] I recognize that my ruling under the traditional test renders an analysis under the effects test duplicative. Out of an abundance of caution, however, I will apply the effects test as well.

threshhold necessary to justify personal jurisdiction where a non-resident defendant directed an intentional tort at a forum resident. See IMO Indus., 155 F.3d at 260. The test is premised on the unexceptional principle that where a non-resident intentionally targets a forum with tortious activity, that defendant should reasonably anticipate being haled into Court there. See id. at 265 ("[T]he unique relations among the defendant, the forum, the intentional tort, and the plaintiff may under certain circumstances render the defendant's contacts with the forum-which otherwise would not satisfy the requirements of due process-sufficient.").

In the present case, all three prongs of the effects test are clearly satisfied with respect to both defendants. First, according to plaintiff's allegations, defendants made fraudulent misrepresentations in their application for life insurance.[6] Fraudulent misrepresentation is an intentional tort. See Marlin Leasing, 2007 WL 1468840, at *3. Second, plaintiff felt the brunt of the alleged harm at its Pennsylvania headquarters where it processed the fraudulent application, paid commissions to the agents involved in the alleged STOLI scheme and "incurred expenses associated with the issuance of the Carnago policy[,]" Pl.'s Br. at 12. See Remick v. Manfredy, 238 F.3d 248, 260 (3d Cir. 2001) ("the brunt of the harm caused by the alleged intentional tort must necessarily have been felt by [the plaintiff] in Pennsylvania, as his business practice is based in Philadelphia."); D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 441 (E.D. Pa. 2006) (noting that "[i]n order for Plaintiff to have felt the brunt of the harm to his reputation in Pennsylvania, he needs to at least have had some connection to Pennsylvania, such as residence there, during the time when the brunt of harm was suffered[]" but finding no evidence of such

---

[6] As noted supra in my analysis under the traditional test, all three of plaintiff's claims arise out of the allegedly fraudulent misrepresentations contained in the life insurance application submitted by defendants.

13

connection).  Defendants do not argue that plaintiff suffered the harm elsewhere.  Finally, by sending the life insurance application containing fraudulent misrepresentations to plaintiff in Pennsylvania, defendants "expressly aimed [their] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  See IMO Indus., 155 F.3d at 265-66.  This is not a case where the tortious conduct merely has an effect in the forum, see, e.g., IMO Indus., 155 F.3d at 254 (finding that the defendant's tortious attempt to prevent the sale of the plaintiff's Italian subsidiary to the defendant's competitor in France was not expressly aimed at New Jersey despite letters and telephone calls directed there), but one in which the tortious conduct was expressly aimed at the forum.  See Marlin Leasing, 2007 WL 1468840, at *3 (finding that the defendant expressly aimed its tortious activity at Pennsylvania when it transmitted fraudulent documents and payments to the plaintiff there).  Therefore, this Court's exercise of personal jurisdiction is appropriate under the effects test as well.

    C.    Conclusion - This Court Has Personal Jurisdiction Over Defendants Under Both the Traditional Test and the Effects Test

For the reasons set forth supra, I find that this Court has personal jurisdiction over defendants under both tests.  Next, I will consider defendants' argument that I should transfer this case to the Eastern District of Michigan.

II.    Venue

Defendants argue in the alternative that I should transfer this case to the Eastern District of Michigan which they allege to be the most convenient forum.  Plaintiff argues that there are no factors of public or private interest that outweigh its decision to litigate this case in its home forum.  See Pl.'s Br. at 18.  For the reasons discussed more fully infra, I agree with plaintiff.

A.  Legal Precepts

28 U.S.C. § 1404(a) empowers a District Court to "transfer any civil action to any other district or division where it might have been brought . . . [f]or the convenience of parties and witnesses [or] in the interest of justice[.]" The purpose of this provision is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" See Van Dusen v. Barrack, 376 U.S. 612, 618 (1964). Jumara requires a two step inquiry. First, I must decide in what District the case might have been brought. See Jumara, 55 F.3d 878-79. Second, I must determine whether a balancing of public and private interests requires that the case be transferred to the Eastern District of Michigan. See id. at 879.

B.  Application

1.  This Case Could Have Been Brought Either in this District or in the Eastern District of Michigan

28 U.S.C. § 1391 governs, for venue purposes, where a case "could have been brought." In a case where subject matter jurisdiction is premised on diversity of citizenship, the case may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Under section 1391(a)(2), the case might have been brought in this District because "a substantial part of the events or omissions giving rise to the claim occurred [here.]" I

have discussed this conclusion at length supra and thus will not readdress it here. See Horgos v. Regions Bank, No. 08-1210, 2009 WL 763431, at *2 (W.D. Pa. Mar. 19, 2009) ("Venue, in a case premised on diversity, may rely on the establishment of personal jurisdiction through minimum contacts[.]"); LaSalle Business Credit, LLC v. Oxenberg, No. 05-5849, 2006 WL 2034819, at *5 (E.D. Pa. July 18, 2006) ("Because this Court previously has determined that the Defendant has sufficient minimum contacts to be subject to personal jurisdiction, venue is proper under 28 U.S.C. § 1391(a).").

Under section 1391(a)(2), the case could also have been brought in the Eastern District of Michigan. Two of the defendants are citizens of Michigan, the alleged STOLI scheme was hatched there and the allegedly fraudulent application was completed and mailed from there. I have no difficulty concluding that a substantial part of the events or omissions giving rise to the claim occurred there.

> 2. Balancing of the Public and Private Interests in this Case Reveals that a Transfer Is Unnecessary

"The burden of establishing the need for transfer . . . rests with the movant[.]" Jumara, 55 F.3d at 879 (citations omitted). Generally, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). In deciding whether a case should be transferred, the Court of Appeals has instructed District Courts to consider factors of public and private interest. See id. The private interest factors include:

> [1] plaintiff's forum preference as manifested in the original choice;
> [2] the defendant's preference; [3] whether the claim arose elsewhere;
> [4] the convenience of the parties as indicated by their relative

16

> physical and financial condition; [5] the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. The public interest factors include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; [6] and the familiarity of the trial judge with the applicable state law in diversity cases.

Id.

With respect to the private factors, the balance of the first two weighs heavily in favor of plaintiff because, as noted supra, "the plaintiff's choice of forum is ordinarily entitled to 'paramount consideration'" while defendants' is entitled to "considerably less." See Reassure America Life Ins. Co. v. Midwest Res., Ltd., — F. Supp. 2d —, No. 09-5590, 2010 WL 2407898, at *11 (E.D Pa. June 14, 2010) (citing Teleconference Sys. v. Proctor and Gamble Pharms., Inc., 676 F. Supp. 2d 321, 329 (D. Del. 2009)); EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D Pa. 2003) ("Defendant's preference is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another.").

Factors three and four weigh slightly in favor of transfer. The claims arose in the Eastern District of Michigan because the defendants completed the allegedly fraudulent application

there.[7]  Likewise, relatively speaking, it is slightly more financially convenient for plaintiff, a corporation, to send representatives to Michigan than it is for the individual defendants to travel to Pennsylvania.  However, I find that these factors are not compelling enough to outweigh plaintiff's choice of forum.  See Reassure America, 2010 WL 2407898, at *11 (acknowledging that plaintiff's choice of forum is paramount).

Finally, factors five and six are neutral.  Defendants assert in their brief that it would be more convenient for their Michigan-based witnesses to testify at a trial held in Michigan.  They have not, however, satisfied their obligation to submit evidence that those witnesses would be unwilling to testify in Pennsylvania.  See Superior Precast, Inc. v. Safeco Ins. Co. of America, 71 F. Supp. 2d 438, 447 (E.D. Pa. 1999).  Additionally, concerns over the convenience of defendants' witnesses are alleviated somewhat by defendants' ability to introduce videotaped depositions, a convenient alternative to live testimony, at trial.  Finally, even assuming that defendants have met their burden, transfer of this case to Michigan would not solve the convenience problem–it would merely shift the problem to the plaintiff.  The same is true with respect to the sixth factor.  Although defendants' evidence is undoubtedly located primarily in Michigan, plaintiff's evidence is located in Pennsylvania.  Because the purpose of the venue transfer statutes "is not to shift the inconvenience from one party to another[,]" neither factor supports transfer.  See EVCO Tech., 379 F. Supp. 2d at 730.  Overall, I find that the private factors weigh against a transfer.

---

[7] My conclusion that the claims arose in the Eastern District of Michigan does not affect my finding that the parties entered into the life insurance contract in Pennsylvania.  The allegedly tortious conduct was initiated prior to the formation of the contract.

With respect to the public factors enumerated by the Court of Appeals, one, three, five and six are neutral. Any judgment will be equally enforceable in either district. Defendants have presented no evidence that either the public policies of the Eastern District of Michigan with respect to fraudulent misrepresentations or the administrative congestion of that District differ in any substantial way with those of this District. Finally, this case does not present the sort of complex, forum-specific legal questions which would require a judge familiar with those legal principles. I am confident that whether Pennsylvania law or Michigan law applies, both this Court and the District Court for the Eastern District of Michigan will be able to apply the law with equal competence.

Public factors two and four, however, weigh against a transfer. It would be more efficient to proceed with the litigation in this forum because I am already familiar with the facts and law underlying the case. If I were to transfer the case, the Michigan Court would need to duplicate my efforts in familiarizing itself with the case. Additionally, Pennsylvania Courts have an interest in vindicating the rights of Pennsylvania citizens when they are injured by the fraudulent misrepresentations of non-residents.

In sum, the public factors also weigh against transferring this case.

CONCLUSION

I find that this Court has personal jurisdiction over defendants Schutte and Carnago. I will accordingly deny their Rule 12(b)(2) motion. I also find that venue is proper in this District and will therefore deny their alternative motion to transfer venue to the Eastern District of Michigan.

An appropriate Order follows.